**Hattie ROBERTS**

v.

**Caspar W. WEINBERGER, Secretary of Health, Education, and Welfare.**

**No. CIV. 3–74–108.**

United States District Court,
E. D. Tennessee, N. D.

Aug. 28, 1974.

Robert A. McNees, III, Lain & Mc-Nees, Oak Ridge, Tenn., for plaintiff.

John L. Bowers, Jr., U. S. Atty., Carl McDonald, Asst. U. S. Atty., Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This is an action to review the final decision of the Secretary denying plaintiff's claim as the widow of a miner for "black lung" benefits pursuant to Title 30 U.S.C. §§ 921(a) and 922(a)(2),[1] of the Federal Coal Mine Health and Safety Act of 1969, Title 30 U.S.C. § 901 et seq., as amended [hereinafter cited as the "Act"]. Title 30 U.S.C. § 923(b) incorporates by reference § 205(g) and (h) of the Social Security Act, Title 42 U.S.C. § 405(g) and (h).[2]

Plaintiff is the widow of Joe E. Roberts who died in a mine accident on October 9, 1956, at age fifty-six. A marriage certificate verified the date of marriage as July 3, 1945. In her application for benefits submitted January 21, 1970, plaintiff alleged her husband's disability was that "he smothered a lot." She also stated that he was employed in the mines for about forty years. Plaintiff testified that she and their three grandchildren were living with and supported by the deceased at the time of his death. She has not remarried since his death. The deceased was working as a motorman[3] in the mines at the time of his death. Decedent had been a motorman since World War II. Plaintiff received workmen's compensation as a result of the miner's death and is now receiving social security survivor's benefits (Tr. 53-54).

A medical report was furnished from Dr. S. J. Van Hook, a general practitioner, which shows the deceased had shortness of breath on exertion and frequent mild respiratory infections during his latter years. Dr. Van Hook had no X-rays or pulmonary function tests and he stated that the deceased was killed in a coal mine accident in 1956.

The miner died after being crushed by a shuttle-car while working in the mines, and no autopsy was performed.

Plaintiff filed an application for widow's benefits under the Act on January 21, 1970. The application was denied initially and then again upon reconsideration by the Bureau of Disability Insurance of the Social Security Administration. Plaintiff requested a hearing which was held on April 21, 1972, but because the Act was amended in May 1972, the Hearing Examiner remanded the case to the Bureau of Disability Insurance for review. After a review of all the evidence under the 1972 amendment, the Bureau of Disability Insurance again denied the application in April 1973. A second hearing was held before a Hearing Examiner on December 3,

---

1. § 921(a) provides in pertinent part: "The Secretary shall . . . make payments of benefits . . . in respect of the death of any miner whose death was due to pneumoconiosis or who at the time of his death was totally disabled by pneumoconiosis." § 922(a)(2) provides that such benefits shall be paid to a miner's widow at the rate the deceased miner would have received were he totally disabled.

2. § 405(g) and (h) provides for review of a final decision of the Secretary in the district courts, giving the district courts the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing."

3. From the record it is unclear exactly what this job entails, except that it does not require the physical exertion that some other jobs in the mine require. Plaintiff listed the miner's job during the fifteen years prior to his death as "motorman, coal loader" in her initial application for benefits. (Exhibit 2)

1973, and the case was considered *de novo.* On January 21, 1974, the Hearing Examiner made the following findings and conclusions:[4]

1. The claimant filed an application for survivor's benefits under the Federal Coal Mine Health and Safety Act of 1969, as amended, on January 21, 1970.

2. The miner died as a result of injuries sustained in a mine accident.

3. The miner did not have "complicated" pneumoconiosis as described in Section 411(c)(3) of the Act.

4. The miner was not "totally disabled" at the time of his death; he was engaged in mining employment on a regular basis.

5. The miner's death was not due to pneumoconiosis or a respirable disease presumed to be pneumoconiosis his death was the result of accidental injuries.

6. This claimant is the widow of the miner and has not remarried.

7. A claim for workman's compensation under applicable state law would be futile.

From these findings, the Hearing Examiner concluded that plaintiff was not entitled to widow's benefits under the Act. The Hearing Examiner's decision became the final decision of the Secretary when the Appeals Council approved it on February 15, 1974. This action was filed April 15, 1974.

Plaintiff testified at both hearings that the deceased was short of breath, had difficulty breathing, and smothered and complained of chest pains at night.

Odell Lively, a co-worker of the deceased in the mines, testified at the first hearing that he was short of breath and had difficulty breathing.

Charlie Gene Pride, a co-worker of the deceased in the mines, testified at the first hearing that the deceased had some breathing problems in the latter part of his life and had to stop and rest while he was working.

Dorothy Sieber, granddaughter of plaintiff and the deceased, who was raised by them after the death of her mother, testified at the second hearing that when the deceased took a nap before going to work you could hear him breathing and coughing "all over the house."

Statements and affidavits from former co-workers of the deceased were submitted which attested to his breathing problems and shortness of breath.

Plaintiff alleged the deceased had frequent chest infections, took many kinds of medicine for his condition and did not seem to be able to get enough air into his lungs.

Plaintiff has moved this Court to remand the case to the Secretary for the taking of further evidence and supports her motion with two contentions: (1) that affidavits filed in support of the motion constitute "newly discovered evidence," and (2) that she did not have proper representation before the Hearing Examiner on either occasion. Defendant has moved for summary judgment pursuant to Rule 56, F.R.C.P.

■■ Taking first plaintiff's motion to remand, it must be noted that plaintiff has the burden of adducing new evidence, outside the record that was before the Secretary, that amounts to "good cause shown" and that convinces the Court that the Hearing Examiner's conclusion would thereby be altered. Caffee v. Finch, 327 F.Supp. 352, 353 (W.D.Ky.1971). With this principle in mind, the Court has considered the affidavits filed in support of plaintiff's motion and finds them to be merely cumulative to the evidence that was before the Secretary.[5] The Court recognizes the difficulty of adducing new medical

---

4. Transcript at p. 19.

5. The seven affidavits, two of which are not acknowledged, uniformly assert that the decedent miner was short of breath, coughed a great deal, could not do heavy work, and made many trips to the doctor.

evidence at this time since the miner died in 1956 and no autopsy was performed. Furthermore, no pulmonary function studies had been performed nor had chest X-rays been taken. However, to remand on the basis of this information would simply be to afford plaintiff a chance to reargue the same case before another Hearing Examiner. This the Court declines to do. Lechelt v. Cohen, 428 F.2d 214, 216 (7th Cir. 1970).

■ As to plaintiff's contention that she was inadequately represented before the Hearing Examiner on both occasions, it is recognized that certainly she is entitled to representation at such hearings if she so desires. Arms v. Gardner, 353 F.2d 197 (6th Cir. 1965). However, in reviewing the record it is manifest that the material facts relating to the miner's death were adduced during the course of the two hearings.[6]

Plaintiff contends that under a 1973 Social Security Ruling (SSR 73–36 Cumulative Bulletin 1973), the result of the Hearing Examiner's decision might be changed. The Ruling, in essence, states that under limited circumstances a miner who was working in the mines at the time of his death and did not have "complicated pneumoconiosis,"[7] could be determined to be totally disabled if his respiratory ailment resulted in sporadic work, poor performance, and marginal earnings. This ruling, however, was specifically considered by the second Hearing Examiner in his findings [8] and the Court is unpersuaded that the presence of counsel at a subsequent hearing would change the result.

■ Plaintiff had retained counsel for the first hearing but not for the second hearing.[9] Counsel for plaintiff states in his memorandum in support of plaintiff's motion for remand that her retained counsel did not appear at the first hearing due to a "mix-up" and in reaction to this plaintiff did not seek an attorney for the second hearing. Plaintiff states in an affidavit in support of the motion to remand that "I realize now that I should have had an attorney to help me with my case. My education ended in the sixth grade." However, there are no indications in the record that plaintiff was not afforded a full and fair opportunity to present her case or that her case was prejudiced by the absence of counsel. In the absence of a showing of clear prejudice or unfairness in the administrative proceeding lack of counsel is insufficient grounds for remanding. Caffee, supra, 327 F.Supp. at 354; Domozic v. Cohen, 413 F.2d 5 (3rd Cir. 1969); Steimer v. Gardner, 395 F. 2d 197 (9th Cir. 1968). In addition to this, the record is clear that plaintiff was aware of her right to representation, and voluntarily chose not to avail herself of counsel at the second hearing.

For the foregoing reasons, the Court is of the opinion that plaintiff is not entitled to a remand in this case.

The sole remaining issue is whether the Secretary's final decision that plaintiff was not entitled to benefits under the Act is supported by substantial evidence.

In order to collect under the Act in this case, plaintiff must show that decedent died before January 1, 1974, and was totally disabled at the time of his death or that his death was due to pneumoconiosis.[10] The Secretary's posi-

---

6. Due to the almost complete lack of medical evidence in the case, the evidence that was before the two Hearing Examiners consisted almost entirely of lay testimony and statements about the miner's physical condition.

7. Discussed infra at p. 234.

8. "Although the evidence is persuasive that the miner had coughing spells and breathing difficulty and he was slowing down, consid-

ering the entire record within the guidelines of Social Security Ruling 73–36, the evidence does not show the miner was totally disabled when he died." (Transcript at p. 18).

9. (Transcript at p. 23).

10. See 20 C.F.R. 410.210 (1972) promulgated by the Secretary pursuant to Title 30 U.S.C. § 921(b).

tion is that plaintiff has not met this burden.

■ The Secretary has promulgated a series of regulations pursuant to Title 30 U.S.C. § 921(b) that describe eligibility for "black lung" benefits.[11] These regulations along with the statutory standards and presumptions under the Act, establish the alternative tests for entitlement. The Court has examined these tests for entitlement under the facts of this case and has concluded that there is substantial evidence to support the Secretary's findings, and therefore, those findings are binding on this Court.[12]

The controlling facts, under the applicable tests for eligibility are that plaintiff could produce no X-ray, biopsy or autopsy reports which indicate the presence of pneumoconiosis [13] nor has plaintiff produced ventilatory function studies.[14] Also, the plaintiff was not able to establish the existence of "complicated pneumoconiosis" in the decedent at the time of his death.[15] Furthermore, the cause of death was clearly due to a mine accident and not due to pneumoconiosis.[16] Also controlling under the remaining alternatives[17] is the fact that there is substantial evidence to support the finding of the Hearing Examiner that the miner was not suffering from a totally disabling chronic respiratory impairment.[18]

11. 20 C.F.R. 410.401 et seq. (1972).

12. Title 42 U.S.C. § 405(g).

13. Title 30 U.S.C. § 902(b) defines pneumoconiosis as a "chronic dust disease of the lung arising out of employment in a coal mine."

14. See 20 C.F.R. 410.490, which describes interim adjudicatory rules for survivors claiming benefits on a miner who died before January 1, 1974. In any event the presumption which might be afforded plaintiff under this regulation may be rebutted if the miner was doing his usual coal mine work when he died, as was the case here.

15. See 20 C.F.R. 410.418 and 410.458.

16. Title 30 U.S.C. § 921(c)(2) and 20 C.F.R. 410.462 allow a rebuttable presumption of death due to pneumoconiosis if a miner is employed ten or more years in the nation's coal mines and died from a respirable disease.

17. See 20 C.F.R. 410.414, 410.426, and 410.454.

18. Title 30 U.S.C. § 902(f) provides in pertinent part that "a miner shall be totally disabled when pneumoconiosis prevents him from engaging in gainful employment requiring the skills and abilities comparable to those of any employment in a mine or mines in which he previously engaged with some regularity and over a substantial period of time."