Annette Caudill FARMER,
Plaintiff-Appellant,

v.

Caspar WEINBERGER, Secretary,
Health, Education and Welfare,
Defendant-Appellee.

No. 74–2319.

United States Court of Appeals,
Sixth Circuit.

Decided July 8, 1975.

Albert A. Burchett, Martin, Ky., Thomas M. Place, Carlisle, Pa., for plaintiff-appellant.

Eugene E. Siler, Jr., U. S. Atty., Robert M. Murphy, Lexington, Ky., for defendant-appellee.

Before MILLER and LIVELY, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

WILLIAM E. MILLER, Circuit Judge.

This action was filed in the district court to review the final decision of the Secretary of Health, Education and Welfare denying plaintiff's claim pursuant to the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 901 et seq. Plaintiff is a widow seeking "black lung" benefits on behalf of the surviving two children of her marriage to a deceased miner.[1] The district court affirmed the finding of the Secretary by granting defendant's motion for summary judgment, concluding that the Secretary's decision was supported by substantial evidence.

Plaintiff is the widow of Diamond Caudill who died September 25, 1971, at the age of 32. The deceased worked as an underground coal miner for 10 to 15 years prior to his death, having no other occupational skills and possessing only a third grade education.

The miner's employment as a coal loading machine operator subjected him to heavy concentrations of coal dust. He began experiencing chest pains and shortness of breath approximately two years prior to his death. He continued to work regularly[2] despite the fact that he was frequently sick during the day and at times required the assistance of other miners to perform his work. Plaintiff also testified that her husband's breathing problems in the years immediately prior to his death had prevented him from hunting, from performing household chores, or helping much in the family garden. Testimony indicated that he suffered from a cough that produced a black colored sputum.

On January 20, 1971, the deceased was given an examination in connection with his application for a job with a different coal company. This examination was conducted by Dr. Martin who is certified by the National Institute of Occupational Health and Safety as a reader of coal miners' chest x-rays. This examination produced a report that deceased's x-ray revealed silicosis and that he was not qualified for continued employment as an underground miner. Contrary to this advice, the deceased was able to obtain employment with the company with the assistance of certain supervisory personnel with whom he was acquainted. Plaintiff testified that her husband continued to work in the mines against this medical advice because he had no other employment skills and was concerned about providing for his children.

Testimony was submitted to establish that in the days immediately preceding

---

1. Plaintiff remarried before this action was filed. She seeks benefits for the surviving children of her marriage to the deceased and widow's benefits for herself covering the period prior to her remarriage.

2. It does not appear that the miner missed much work during these last two years. He was working five nights a week at the time of his death.

his death the deceased complained of chest pain, shortness of breath, and considered quitting his job because of this condition. On the afternoon before his death he stated that if he "didn't need the money so bad [he] wouldn't go to work that night." Nevertheless, he did work the second shift that night and upon returning home complained of being ill. The next morning he began to choke and was unable to breathe. He died on the way to the hospital. While no autopsy was performed, the death certificate, signed by a mortician who was not a physician, attributed the death to a coronary occlusion. The deceased had no history of heart trouble, and as far as plaintiff knew he had never been treated by a doctor for any condition except a kidney ailment.

Although the administrative law judge found the miner's death to be of unknown origin, it was further found that the death was not caused by pneumoconiosis (black lung) and that the deceased was not totally disabled by pneumoconiosis at the time of his death. The administrative law judge concluded that the medical evidence established that the deceased had simple (as opposed to complicated) pneumoconiosis. It was decided, however, that any presumption that existed that deceased's death was due to pneumoconiosis or that he suffered from a total disabling lung disease at the time of his death was rebutted by the fact that he was actively employed and working as a miner when he died.

■ Plaintiff first argues that the provisions of 20 C.F.R. § 410.490(c) which provide for the rebuttal of the presumption allowed by 20 C.F.R. § 410.490(b) should not be applied to a case involving widow's benefits as opposed to benefits to the miner himself. The interim adjudicatory rules contained in 20 C.F.R. § 410.490(b) provide for the following presumption:

(b) *Interim presumption.* With respect to a miner who files a claim for benefits before July 1, 1973, and with respect to a survivor of a miner who dies before January 1, 1974, when such survivor timely files a claim for benefits, such miner will be presumed to be totally disabled due to pneumoconiosis, or to have been totally disabled due to pneumoconiosis at the time of his death, or his death will be presumed to be due to pneumoconiosis, as the case may be, if:

(1) One of the following medical requirements is met:

(i) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis (see § 410.428);

* * * * * *

(2) The impairment established in accordance with subparagraph (1) of this paragraph arose out of coal mine employment (see §§ 410.416 and 410.456).

* * * * * *

Plaintiff analyzes this regulation as creating three independent presumptions where the stated conditions have been met: (1) that a living miner is totally disabled; (2) that a deceased miner was totally disabled at the time of his death; and (3) that a deceased miner's death was due to pneumoconiosis. It is argued that 20 C.F.R. § 410.490(c), which provides for the rebuttal of the presumption of 20 C.F.R. § 410.490(b) where the miner is doing his usual coal mine work, should be read as applying only to the presumption that arises in behalf of *living* miners, having no applicability to rebut the presumptions in favor of widows that a miner was totally disabled by pneumoconiosis at the time of his death or that the miner's death was due to the disease. The basis for this argument is that the use only of the present tense of the verb in the rebuttal regulation infers that it is to apply only to living miners presently working and claiming total disability.

We are unable to agree with plaintiff's analysis of the regulations. The rebuttal regulation, 20 C.F.R. § 410.490(c), reads as follows:

(c) *Rebuttal of presumption.* The presumption in paragraph (b) of this section may be rebutted if:

(1) There is evidence that the individual is, in fact, doing his usual coal mine work or comparable and gainful work (see § 410.412(a)(1)), or

(2) Other evidence, including physical performance tests (where such tests are available and their administration is not contraindicated), establish that the individual is able to do his usual coal mine work or comparable and gainful work (see § 410.412(a)(1)).

We do not find it to be significant that the present tense is used in providing for a rebuttal of the presumption of 20 C.F.R. § 410.490(b). If the Secretary had intended to provide for a rebuttal of the presumption only in the instance of living miners he doubtless would have so stated in more precise terms. While plaintiff analyzes 20 C.F.R. § 410.490(b) as setting forth three separate presumptions, it is clear from the wording of the rebuttal provisions that the Secretary views the regulations as providing for a single presumption applicable both to presently living miners and miners who had pneumoconiosis at the time of their deaths. The phrase, "is, in fact, doing his usual coal mine work," is equally appropriate to both situations in that it refers to the time frame in which the work is done, whenever that period is. Although it appears that the issue has not been previously decided, district court cases have assumed that 20 C.F.R. § 410.490(c) is applicable to rebut the presumption of 20 C.F.R. § 410.490(b) even in the case of a claim for widow's benefits. *See Cox v. Weinberger,* 389 F.Supp. 268, 271 (E.D.Tenn. 1975); *Rainey v. Weinberger,* 388 F.Supp. 1277, 1278 (E.D.Tenn. 1975); *England v. Weinberger,* 387 F.Supp. 343, 344 (S.D.W.Va. 1974); *Statzer v. Weinberger,* 383 F.Supp. 1258, 1261 (E.D.Ky. 1974); *Roberts v. Weinberger,* 383 F.Supp. 230, 234 n. 14 (E.D.Tenn. 1974).

Plaintiff next argues that even if 20 C.F.R. § 410.490(c) was correctly applied in this case, the regulation conflicts with the intent of the 1972 amendments to the Coal Mine Health and Safety Act and consequently is invalid as being in excess of the Secretary's rulemaking authority. Plaintiff quotes from the Senate Report on the bill making the amendments in an effort to demonstrate that Congress did not intend to have the presumption work against widows of miners who die while still employed in the mines:

Under the operation of the law as it now exists, a widow is at the mercy of circumstances. Although her husband clearly had totally disabling pneumoconiosis, and would have been eligible were he alive, he may have died in a *rock fall,* or accident, or even a heart attack which may not be established medically to be casually related to pneumoconiosis. Under these circumstances his widow would not be eligible. However, the widow's neighbor, whose husband died of natural causes after receiving [the] title IV benefits, is entitled to the benefit of title IV. Such a result would seem to be unduly harsh *with respect to widows whose husbands gave their health, and in many cases their lives, in the service of the nation's critical coal needs.* [Senate Rep. No. 72–743, U.S. Code Cong. & Admin.News, p. 2312 (1972)] (Emphasis Supplied).

It cannot be disputed that it was the intention of Congress to liberalize the provisions for black lung benefits through the 1972 amendments. It does not follow, however, that Congress intended to do this by providing a widow with a presumption that her husband was totally disabled due to pneumoconiosis or that his death was due to that disease even though the husband was able to continue to work a five day week until the day of his death. In fact, there is persuasive evidence that Congress was concerned that there be no presumption of total disability provided in the case of a miner who is able to continue his full time work in the mines. This question was raised at conference and the House agreed to the language in the bill defin-

ing "total disability" with the understanding that under that language "it is not intended that a miner be found to be totally disabled if he is *in fact* engaging in substantial work involving skills and abilities closely comparable to those of any mine employment in which he previously engaged with some regularity." (emphasis added) Conference Report No. 92–1048, U.S.Code Cong. & Admin.News, p. 2338 at 2339 (1972). We are unable to agree that a regulation that rebuts a presumption of total disability or death due to pneumoconiosis where the miner in question is actually fully employed in the mines is contrary to congressional intent.[3]

■ Even if 20 C.F.R. § 410.490(c) was correctly applied to rebut the presumption in 20 C.F.R. § 410.490(b), the regulation, plaintiff argues, must be considered arbitrary and a denial of due process of law. The basis for this argument is that the presumption that the miner's death. was caused by pneumoconiosis would be rebutted by his continued work in the mines, a fact which plaintiff says is completely unrelated to the cause of death. It is urged that, if anything, continued coal mine employment would logically *support* a finding of death due to pneumoconiosis rather than tend to negate that fact. This is true, it is stated, because the continued exposure to the dust of the mine increases the chances of death from pneumoconiosis. While it is indisputably true that the chances of *eventually* dying of pneumoconiosis increase with the length of time worked in the mines, it is certainly also true that a miner whose health was sufficiently

sound to enable him to work five days a week in the mines up until the time of his death, is less likely to have *died* from pneumoconiosis than a miner who had already been rendered unable to work by the disease. We therefore find plaintiff's due process claim to be without merit.

Plaintiff's final position is that even if the court correctly ruled that she was not entitled to the unrebutted interim presumption of 20 C.F.R. § 410.490(b), she is still entitled to the benefits pursuant to the permanent regulations. Specifically, she claims that the Secretary erred in not applying 20 C.F.R. § 410.462(b) to her claim.

■ 20 C.F.R. § 410.462 provides that where a miner was employed in the mines for at least 10 years and died of a respirable disease, it is to be presumed, in the absence of evidence to the contrary, that his death was due to pneumoconiosis arising out of employment in a coal mine.

20 C.F.R. § 410.462(b) goes on to provide:

(b) Death will be found due. to a respirable disease when death is medically ascribed to a chronic dust disease, or to another chronic disease of the lung. Death will not be found due to a respirable disease where the disease reported does not suggest a reasonable possibility that death was due to pneumoconiosis. Where the evidence establishes that a deceased miner suffered from pneumoconiosis or a respirable disease and death may have been due to multiple causes, death will be found due to pneumoconiosis if it is not

3. It is also argued that if the application of 20 C.F.R. § 410.490(c) was proper then that regulation conflicts with Congress' intent that disability requirements for black lung purposes not be more restrictive than disability requirements for Title II Social Security benefits. 30 U.S.C. § 902(f). Plaintiff relies on 20 C.F.R. 404.1502(c), promulgated under Title II, which states that work which is "medically contraindicated" will not preclude a finding of disability.

We cannot agree that the black lung regulations contravene the congressional mandate forbidding a more restrictive test for disability than that found in other social security cases. As discussed below, employment against medical advice where poor work performance is the result will not preclude a finding of disability. This factor is nevertheless relevant to the determination of whether certain presumptions of disability apply. In fact the consideration of this factor is required by the definition of disability stated in the statute as read in light of the conference report. 30 U.S.C. § 902(f); Conference Report No. 92–1048, U.S.Code Cong. & Admin.News. p. 2338 at 2339 (1972).

medically feasible to distinguish which disease caused death or specifically how much each disease contributed to causing death.

It is argued that this regulation applies where the precise cause of death is unknown and autopsy evidence is unavailable as in this case. It is contended that in light of the showing of some degree of pneumoconiosis or silicosis, and that the deceased was choking and unable to breathe during his fatal attack, in the absence of evidence of his having any other disease, it is reasonable to assume that pneumoconiosis caused or contributed to the deceased's death, thus bringing the regulation into play.

We do not find that plaintiff has sufficiently brought her case within 20 C.F.R. § 410.462 to permit her to take advantage of its presumption. It has not been shown that the death was "medically ascribed to a chronic dust disease, or to another chronic disease of the lung." The only evidence in the record which bears directly on the cause of death is the death certificate signed by a mortician ascribing death to a coronary occlusion. This document does not provide medical evidence of the cause of death and the administrative law judge justifiably found that the exact nature of the deceased's fatal attack remains unknown. The regulation provides that where the death of a miner who suffered from pneumoconiosis "may have been due to multiple causes" such death could be found to be due to pneumoconiosis "if it is not medically feasible to distinguish which disease caused death or specifically how much each disease contributed to causing death." Here there was no attempt made to ascertain the cause of death and it is not known whether it would have been medically feasible to distinguish between various possible causes of death. We do not view this provision as applicable to a case where, as here, there is no medical indication at all as to the cause of death. Since plaintiff has failed to establish that her husband's death was due to a respirable dis-

ease, she is not entitled to the benefit of the presumption of 20 C.F.R. § 410.462.

■ There is nothing to show that the administrative law judge ignored this or any other regulation in reaching his decision. We see no basis for plaintiff's implication that the judge based his determination solely on the presumption of 20 C.F.R. § 410.490(b). The administrative decision refers to "certain presumptions" that prevail in these types of cases and does not state a specific reliance on any particular presumption. Nor is it shown that the judge limited his evaluation to the prescribed presumptions to aid claimants in proving their cases. 30 U.S.C. § 921(d) provides that "[n]othing in [the section of the statute establishing presumptions] shall be deemed to affect the applicability of subsection (a) of this section in the case of a claim where the presumptions . . . are inapplicable." Thus if the presumptions do not apply, it is necessary to weigh the evidence to determine whether the statutory standard is met. This standard is set forth in 30 U.S.C. § 921(a) which provides for "payment of benefits in respect of total disability of any miner due to pneumoconiosis, and in respect of the death of any miner whose death was due to pneumoconiosis or who at the time of his death was totally disabled by pneumoconiosis."

■ The Secretary specifically found, based on all the evidence, that it could not be determined that death in this case was due to pneumoconiosis and that the miner was not totally disabled due to the disease. There is no contention, other than those dealt with above, that this factual determination was not made in accordance with the regulations promulgated under the Act. We find that this determination by the Secretary is supported by substantial evidence.

There are a number of district court cases in which the courts have upheld the findings of the Secretary in factual situations remarkably similar to the facts presently before us. See *Cox v. Weinberger*, 389 F.Supp. 268 (E.D.Tenn.

1975); *Rainey v. Weinberger*, 388 F.Supp. 1277 (E.D.Tenn. 1975); *England v. Weinberger*, 387 F.Supp. 343 (S.D.W. Va. 1974); *Statzer v. Weinberger*, 383 F.Supp. 1258 (E.D.Ky. 1974); *Roberts v. Weinberger*, 383 F.Supp. 230 (E.D.Tenn. 1974); *Ciaravella v. Richardson*, 377 F.Supp. 201 (W.D.Pa. 1974). In each of these cases a widow sought benefits after her husband had died while still working in the mines. In each case the miner had been employed in the mines for a period of from 25 to 40 years and complained of difficulty in breathing and various other respiratory problems of differing degrees. In each case the Secretary found that death was not due to pneumoconiosis and that the miner was not disabled by that disease at the time of his death. Finally, in each case the findings by the Secretary were upheld as supported by substantial evidence upon records similar to the record before us. In some instances the records were more favorable to the claimant than the present record.

Plaintiff, however, calls our attention to the fact that a miner can be totally disabled and still, through sheer determination, put in a full week's work in the mines. This fact was recognized in *Dellosa v. Weinberger*, 386 F.Supp. 1122 (E.D.Pa. 1974). In that case a miner with 25 years of employment was killed in a mine accident. The widow filed for black lung benefits and produced evidence of her husband's heavy coughing, oral discharge of blood and a black substance, severe shortness of breath and loss of weight, all of which had resulted in his missing work. The widow also testified that in the last year before his death her husband had worked only two days a week and that when he did get to work he was unable to perform satisfactorily without the assistance of others. Nevertheless, the Secretary had denied benefits. The district court determined that the finding that the miner was not totally disabled was not based on substantial evidence in light of the fact that the miner was unable to perform his work properly in the mines. The court

therefore remanded the case with instructions that the Secretary, among other things, reconsider his findings in light of Social Security Ruling 73–36, which provides that in the case of "sporadic work, poor performance and marginal earnings," continued employment might not preclude a finding of total disability. While we are in agreement with the proposition stated in Ruling 73–36, it is apparent from a reading of the transcript of the hearing before the administrative law judge in this case that he measured the evidence in light of this standard. The judge asked numerous questions with regard to the issue of the deceased's regularity of work and his ability properly to perform when he did work. He expressed the opinion that this evidence was relevant and extremely important. It is clear that he did not consider it to be a conclusive determination against total disability that a miner was employed until his death. This is made apparent from the following statement at the hearing:

ADMINISTRATIVE LAW JUDGE: I can tell you that, because while a lot of these miners are good employees and had been for years and sometimes in the last few years, even if they were developing bad pneumoconiosis, they were no longer real good employees because of frequency of missing work and that's important. It's important to her and it's important to me or vice versa. Because that sets a certain pattern and while I'm on that subject, I might point out to you, we'll get to this later again I'm sure, that whatever presumptions prevail in these cases there is also the presumption that a man basically is not disabled if he is working and this is why the frequency is so important, in this type, where a man has worked and if he died in the mines or died right after he comes off his shift in the mines as this case is. Do you see what I'm saying?

We do not therefore find it necessary to remand the case for reconsideration on the question of total disability.

Having found the Secretary's findings to be supported by substantial evidence, and having determined that plaintiff's legal arguments are without merit, the judgment of the district court should be and it is hereby

Affirmed.