May COSAND, Plaintiff,

v.

SECRETARY OF HEALTH, EDUCATION AND WELFARE, Defendant.

Civ. A. No. 5–70929.

United States District Court,
E. D. Michigan, S. D.

Feb. 10, 1976.

Alan F. Polack, Macomb County Legal Aid Bureau, Mt. Clemens, Mich., for plaintiff.

Frederick S. Van Tiem, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This case involves the use to be made of and effect of the statutory presumption in the Black Lung Benefits Act of 1972.

Plaintiff is an 85-year-old widow who asks this court to review the decision of the Secretary of Health, Education and Welfare denying her claim for benefits under the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 901 *et seq.*, as amended. Under 30 U.S.C. § 923(b) and 42 U.S.C. § 405(g), the court may affirm, modify, or reverse the Secretary's decision, but the Secretary's findings are conclusive if they are supported by substantial evidence.

May Cosand's deceased husband, John, was born on November 7, 1884, and worked as a coal digger in the Arkansas coal mines from his boyhood, for about 34 years. He stopped working in the mines when they closed in 1939 and migrated to the Detroit area with his family, in search of work. Sometime shortly after his move north, he suddenly lost a substantial amount of weight. Formerly a robust man of 5'10", he dwindled to 125 pounds and never regained more than 5 pounds. Nevertheless, he found odd jobs, worked as a millwright, and spent a number of years at a factory job. At the age of 65, according to his wife's testimony, he retired. On May 14, 1958, he died in the early morning in bed. He was taken immediately to a funeral parlor, and no autopsy was performed.

The plaintiff filed a claim for benefits under the Federal Coal Mine Health and Safety Act of 1969, as amended by the Black Lung Benefits Act of 1972. The administrative law judge denied the benefits. This was affirmed by the appeals council. The case is now before this court to review the findings and decision denying benefits.

Black lung benefits first became available in 1969, 11 years after John Cosand died. In 1972, the Senate Report to the Black Lung Benefits Act of 1972 pointed out the failure of the 1969 provisions when it said:

"Not only have the number of claims far exceeded those earlier expectations of Congress, indicating a more widespread and more serious problem than they anticipated, but also the rate of denials—more than fifty percent nationwide, and as high as 72 percent in some states—suggests strongly that the solution has not been nearly as complete as Congress believed and expected it would be.

. . . . . .

". . . [I]t has become glaringly apparent that the Act is not benefiting many of the nation's disabled coal miners who Congress intended to benefit. Testimony has indicated that miners with disabling breathing impairments who cannot be diagnosed medically as suffering from pneumoconiosis, because of the state of the art, are being denied benefits though they are as severely and often times more severely impaired than miners whose claims have been granted.

"The reasons for these denials are many. The great majority of denials are attributed to the inability of the miner to present X-ray evidence of the disease. . . ."

2 U.S.Code Cong. & Admin.News pp. 2307, 2312–13 (1972).

In order to remedy its failure to protect the miners adequately, Congress enacted the 1972 Black Lung Benefits Act. Among its various provisions to aid the miners is a provision creating a rebuttable presumption that a miner's death was due to pneumoconiosis if it is established that the miner worked underground for 15 years or more in a coal mine and that at the time of his death he was totally disabled by a respiratory or pulmonary impairment. The statute permits the Secretary to rebut the presumption only by a showing that he did not have pneumoconiosis or that the respiratory or pulmonary impairment did not arise in a coal mine.

The Senate Report in support of the 1972 Act said:

"The Black Lung Benefits Act of 1972 is intended to be a remedial law—to improve upon the 1969 provisions so that the case which should be compensated, will be compensated. In the absence of definitive medical conclusions there is a clear need to resolve doubts in favor of the disabled miner or his survivors.

"The Committee bill gives the benefit of the doubt to claimants by prohibiting denial of a claim solely on the basis of an X-ray, by providing a presumption of pneumoconiosis for miners with respiratory or pulmonary disability where they have worked 15 years or more in a coal mine, and by requiring the Social Security Administration to use tests other than the X-ray to establish the basis for a judgment that a miner is or is not totally disabled due to pneumoconiosis."

2 U.S.Code Cong. & Admin.News p. 2315 (1972).

The statute reads as follows:

"if a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's, his widow's, . . . or his dependent's claim under this subchapter and it is interpreted as negative . . . and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis. . . . The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine." 30 U.S.C. § 921(c)(4).

■ The specific reference in the statute to chest roentgenograms is intended to limit the use of such X-rays to establish lack of pneumoconiosis. See the Report of the Senate Committee quoted above. It should not be construed as requiring a negative chest roentgenogram before the presumption will apply. This conclusion is fortified by the statutory provision that the broadest type of evidence should be considered in connection with these claims:

"In determining the validity of claims under this part, all relevant evidence shall be considered, *including* . . . *any medical history, evidence submitted by the claimant's physician, or his wife's affidavits, and in the case of*

*a deceased miner, other appropriate affidavits of persons with knowledge of the miner's physical condition, and other supportive materials.*" 30 U.S.C. § 923(b), as amended by the Black Lung Benefits Act of 1972. (Emphasis added).

The evidence before the administrative law judge consisted of testimony by the widow, a son, a daughter, three letters from John Cosand's doctor, and four statements by longstanding acquaintances.

May Cosand testified that her husband coughed often; that this cough produced a black substance in the sputum; that he suffered severe shortness of breath, making it impossible for him to work in his garden and to walk downtown to pick up the family's mail; that he was forced to sleep in an upright position on pillows; passed out on several occasions when engaged in moderate activity; was often unable to work, but felt compelled to work in order to provide for his family; that he feared doctors more than he feared the consequences of neglecting his health; and that miners who worked with him in the mines subsequently underwent medical tests and were now collecting black lung benefits, but that he had died by the time those tests became known.

About the circumstances of her husband's death, she testified that he ate dinner the preceding evening and that in the early morning, while they were still in bed, she "heard a little noise; and I said, 'Oh, you're snoring again, John.' And I took hold of his hand and I seen it was limp. . . . [H]is tongue was sticking out of part of his mouth." She did not see the death certificate until years later, when she attempted to establish a basis for this claim. Upon seeing that the cause of death was recorded as acute indigestion, she assumed that she had been mailed the wrong certificate. Overeating, she testified, was one thing that her husband never did, despite her frequent attempts to fatten him up. The doctor who made out the death certificate had never seen her husband before.

Her son added to this testimony that his father often spit up blood and that his ailment had been diagnosed in the 1920's as tuberculosis. Another doctor later discredited this diagnosis, but did not offer a diagnosis of his own.

Letters from Dr. Woods, John Cosand's doctor, showed that in 1958 Dr. Woods saw Cosand about a complaint of nocturnal dypsnea. The doctor found that Cosand's heart was "considerably enlarged with a moderate arrythmia, edema and some hypostasis." His "[i]mpression was that of congestive heart failure," and he prescribed for that condition. His later reports indicated that the dypsnea and edema were "markedly improved," but that "[t]his man's cardio-respiratory capacity was obviously very limited." Dr. Woods' records also indicated that Cosand had a chest x-ray in 1952 which was "apparently negative," but Dr. Woods did not take that x-ray and did not know where it had been taken.

Three of John Cosand's life-long acquaintances signed statements that he suffered from chronic heart and lung troubles, and a fellow factory employee who worked with Cosand for 4 years reported that Cosand was very short of breath, coughed constantly, and often had to sit and rest to catch his breath.

The plaintiff was denied benefits because of two findings by the administrative law judge:

1. Death was not due to pneumoconiosis or a totally disabling respiratory or pulmonary impairment, but to a heart condition or acute indigestion; and

2. At the time of his death, his disability was not of sufficient severity to preclude him from doing his previous coal mining work, or considering his age, education and work experience, other kinds of comparable, gainful work available to him in the immediate area.

▪ Without the statutory presumption, the findings, if supported, lead directly to the denial of benefits. However, the presumption created by 30

U.S.C. § 921(c)(4) requires the administrative law judge to travel a longer road to a conclusion. The facts needed to create the presumption of death due to pneumoconiosis are only two: (1) fifteen years work in an underground coal mine; and (2) the existence of a totally disabling respiratory or pulmonary impairment at the time of death. The administrative law judge did not walk through the process of considering the presumption and determining its effect in this case. He jumped too soon to the ultimate conclusion.

The appropriate questions to ask are these:

1. Did the deceased work in the nation's coal mines for more than 15 years?

2. Does evidence other than a chest roentgenogram demonstrate the existence of a totally disabling respiratory or pulmonary impairment?

There are two parts to this question:

a. Is there a respiratory or pulmonary impairment, and

b. Is the impairment totally disabling?

■ The administrative law judge found, and it is not disputed, that the deceased was employed for more than 30 years in the nation's coal mines. This is the right question and the right answer. However, he next went to the ultimate fact of cause of death and failed to determine whether other evidence demonstrated the existence of a totally disabling respiratory or pulmonary impairment. A finding that death is not due to a totally disabling respiratory impairment is not the appropriate finding to negate the statutory presumption.

*Respiratory or Pulmonary Impairment*

■ The evidence is overwhelming that John Cosand suffered from a respiratory or pulmonary impairment. It may be summarized as follows:

1. He was chronically short of breath to a degree that prevented or severely impeded walking, gardening, shoveling, sleeping, and, to an undetermined degree, his working capacity.

2. He became unconscious on occasions when he attempted to perform activities requiring moderate exertion.

3. In the early 1940's, his weight decreased to 125 pounds, although he was a man of 5'10" height, and he never regained this weight.

4. He coughed chronically, spitting up black dust and blood.

5. He sought medical help for a condition that his doctor diagnosed as dypsnea.

6. He was once diagnosed as suffering from tuberculosis.

7. He was diagnosed by his doctor as having "obviously very limited" "cardio-respiratory capacity."

*Total Disability*

■ The amended act expressly requires that "*all* relevant evidence *shall* be considered" by the administrative law judge in determining the validity of a claim. 30 U.S.C. § 923(b). Congress intended that the evidence by wives, other members of the family, and acquaintances, should be given effect by its explicit directive that "relevant" evidence includes such lay evidence. *Id.* Despite the clear requirements of the Act, however, the administrative law judge in this case failed to consider all the relevant evidence before him. Apparently, he instead relied on evidence that Cosand managed to find sporadic employment until he retired—the only basis upon which the administrative law judge could have found that the evidence failed to establish that at the time of his death John Cosand's disability precluded him from engaging in his previous coal mine work or comparable gainful employment, i. e., was "totally disabled." Such evidence, however, is not probative of Cosand's capabilities *at the time of his death.** At the time of his death, John

---

* Nor, for that matter, would such evidence have proved that he was not suffering from a total disability while he was still employed. As the Sixth Circuit has indicated, "a miner can be

Cosand had not worked at all for several years, and the uncontradicted evidence shows that he was incapable of even moderate exertion. There is *no* evidence in the record to support an inference that John Cosand was capable of gainful employment at the time of his death.

 The evidence in the record demonstrates and the court finds that John Cosand suffered from a totally disabling respiratory or pulmonary impairment at the time of his death, and since it is conceded in this case that the miner worked in the mines for more than 15 years, the statutory presumption therefore requires a finding that his death was due to pneumoconiosis. The Secretary may rebut the presumption only by establishing that Cosand did not have pneumoconiosis. As shown in the discussion below, such evidence was not presented.

*Rebutting the Presumption*

The last question to be asked is:

Did the Secretary establish that the deceased did not have pneumoconiosis or that the respiratory or pulmonary impairment did not arise out of or in connection with employment in a coal mine?

 The presumption created in section 921(c)(4) was intended to shift the burden of proof to the Secretary to prove by a preponderance of the evidence the facts suggested, and the statutory language clearly accomplishes this purpose. Although the administrative law judge's findings in this case do not indicate that he placed the burden on the Secretary to prove the facts by a preponderance of the evidence, his express finding that death was caused by a heart condition or acute indigestion suggests

as much. Thus, in light of the presumption favoring the claimant, the issue on review narrows itself to whether the finding that the Secretary established by a preponderance of the evidence that death was not due to pneumoconiosis or that the respiratory or pulmonary impairment did not arise out of work in the coal mines, but to acute indigestion or a heart condition, is supported by substantial evidence. If the finding is supported by substantial evidence, then it must be affirmed. If, however, it is not so supported, the denial of benefits may be reversed.

 The only evidence that the cause of John Cosand's death was not pneumoconiosis was a death certificate completed by a physician who had never seen John Cosand alive and who did not have the benefit of any autopsy, and an observation by a doctor some three years earlier that John Cosand suffered from certain heart problems. The death certificate reported that the cause of death was acute indigestion. This is contradicted by all of the other responsible evidence in the case about the deceased's habits, his physical condition, and his condition immediately prior to death. It has been held that a similar death certificate is not substantial evidence to support a finding by the Secretary, because it "does not amount to 'such relevant evidence as reasonable minds would accept as adequate to support a conclusion.'" *Craig v. Weinberger*, 522 F.2d 394 (6th Cir. 1975). As a matter of law, therefore, the death certificate alone did not establish by a preponderance of the evidence that Cosand did not have pneumoconiosis.

 The observation by Dr. Woods, three years earlier, that the deceased's heart appeared "considerably enlarged

---

totally disabled and still, through sheer determination, put in a full week's work in the mines." *Farmer v. Weinberger*, 519 F.2d 627, 633 (6th Cir. 1975). In *Farmer*, the evidence before the administrative law judge clearly established that the miner was regularly employed five days a week up to the time of his death and was able to perform properly on the job. Furthermore, the administrative law

judge made it clear that he had not considered the miner's full employment up to the time of his death to be conclusive evidence against total disability. In light of these considerations, the court concluded that the Secretary's finding that the deceased miner was not totally disabled was supported by substantial evidence. 519 F.2d at 633. *See, e. g., Craig v. Weinberger*, 522 F.2d 394 (6th Cir. 1975).

with a moderate arrythmia, edema and some hypostasis" also is not sufficient to establish that John Cosand did not suffer and die from pneumoconiosis. At most, it established that Cosand also suffered from a heart condition which did not prevent him from living for another three years after the diagnosis. The court finds that this evidence tends to establish only that John Cosand suffered from more than one problem. It does not meet the burden placed on the Secretary to disprove the presumed cause of death.

 It would be inappropriate for this court to attempt to weigh the evidence presented to the administrative law judge. It is the sole province of that judge to weigh the evidence and determine whether it amounts to a preponderance. It is appropriate, however, for this court to intervene if the evidence before the administrative law judge could not have rebutted the presumption as a matter of law. In this case, the Secretary should not have found that the presumption was rebutted on the basis of the evidence before him, and therefore his finding that Cosand's death was attributable to either a heart condition or acute indigestion is not supported by substantial evidence.

It was for just such a case as this that Congress enacted the 1972 amendments instructing the Secretary and the courts to be liberal in assessing black lung claims and providing a strong presumption in favor of all miners who worked 15 years in the mines. The evidence sets forth clearly and without contradiction that Cosand, a miner for more than 30 years, suffered from a disabling respiratory or pulmonary impairment. The 1972 amendment to section 921 requires the presumption that John Cosand died of pneumoconiosis. That presumption was not rebutted by evidence of such convincing character to meet the preponderance of evidence test. The Secretary's decision is accordingly reversed and the claimant is to be given her benefits under the Act forthwith.

So ordered.