Jeanette FARMER, Plaintiff-Appellant,

v.

F. David MATHEWS, Secretary Health, Education & Welfare, Defendant-Appellee.

No. 77–3089.

United States Court of Appeals, Sixth Circuit.

Argued June 23, 1978.

Decided Oct. 3, 1978.

Lester S. Potash, Rollins & Mossesson, Cleveland, Ohio, for plaintiff-appellant.

Frederick M. Coleman, U. S. Atty., Cleveland, Ohio, D. D. Weisberger, Asst. U. S. Atty., Cleveland, Ohio, Alan Dorn, Asst. Regional Atty., Chicago, Ill., for defendant-appellee.

Before LIVELY, ENGEL and KEITH, Circuit Judges.

LIVELY, Circuit Judge.

The widow of a miner who worked nearly 40 years in underground coal mines appeals the denial of her application for black lung benefits pursuant to Subchapter IV of the Federal Coal Mine Health and Safety Act of 1969 as amended (the Act), 30 U.S.C. § 901, et seq. (1970 ed. Supp. V). Though the miner worked and died in West Virginia, the widow was living in Ohio when she filed her claim. Benefits were denied initially by a disability examiner and upon reconsideration after a hearing before an administrative law judge. The Appeals Council adopted the findings and conclusions of the administrative law judge and this became the final decision of the Secretary. The plaintiff then filed this action in the district court, which granted the Secretary's motion for summary judgment on the basis of the administrative record.

It is conceded that the plaintiff is the "widow" of Dock Farmer within the definition of the Act, 30 U.S.C. § 902(e), and the regulations, 20 CFR § 410.210 (1977). However, the Secretary found, and the district court agreed, that plaintiff had failed to prove either that her husband was totally disabled by reason of pneumoconiosis at the time of his death or that his death was due to pneumoconiosis. A widow must establish one of these conditions to be entitled to the payment of black lung benefits. 30 U.S.C. § 921(a). On appeal plaintiff contends that she established the existence of both conditions—total disability from pneumoconiosis and death due to pneumoconiosis.

Plaintiff was not represented by counsel at the hearing before the administrative law judge. She testified that her husband had a bad cough which produced black mucus and had so much difficulty breathing that he often slept sitting up rather than lying down. He used a "respirator" for the last two years of his life. Mrs. Farmer did not know of her husband's ever having heart trouble and testified that his only hospitalizations were for a broken foot and for high blood pressure. A letter from a physician stated that he treated Dock Farmer for cardiovascular hypertension in 1954 and 1955, and there was no evidence of any treatment for this condition after January 4, 1956. His death occurred in October 1972. The decedent's son testified that he was with his father often during the last two months of his life. He stated that his father coughed a great deal and that he could only walk 10 or 15 minutes at a time before stopping to rest. There were a number of written statements from neighbors and co-workers who described Dock Farmer's breathing problems and physical limitations prior to his death.

Dock Farmer worked full shifts at the mines until the day he died. He was dead on arrival at a Logan, West Virginia hospital. A doctor who had never attended Farmer and apparently had never seen him alive signed a death certificate which showed the immediate cause of death as "Probably acute myocardial infarction." No contributing conditions were shown. An autopsy was performed at Guyon Valley Hospital. The "autopsy protocol" contained the following statement:

LUNGS: Cripitant to subcripitant to palpation. Surfaces reveals scattered black pigmented all over especially of the posterior aspect and apex of the lung.

On section the pigmentation is distributed throughout the lung parenchyma. A large amount of frothy fluid expressed from the cut surface.

The tissues were then sent to a pathologist in Huntington, West Virginia whose report contained the following findings upon microscopic examination and diagnosis:

MICROSCOPIC EXAMINATION:

Examination of the lungs reveal severe emphysematous changes manifested by large air sacs surrounded by broken and club shaped alveolar walls. The alveolar walls are thickened by deposits of fibrous connective tissue. There is subpleural fibrosis and marked deposition of granular black pigment. A similar pigment is scattered throughout the pulmonary parenchyma in nodular fashion and is especially prominent perivascular and peribronchial areas. The alveolar spaces contain edema fluid in some areas. The hilar lymph nodes show severe deposition of anthracotic pigment. No silicia is identified by polarized microscopy.

DIAGNOSIS:

1. Pulmonary emphysma and fibrosis.
2. Pulmonary anthracosis.
3. Pulmonary edema.

Since the regulations include anthracosis in the definition of pneumoconiosis under the Act, 20 CFR § 410.110(*o*), the autopsy report established that Dock Farmer did suffer from pneumoconiosis at the time of his death. The administrative law judge found, however, that the autopsy report did not reveal the existence of "advanced" or "complicated" pneumoconiosis sufficient to entitle the plaintiff to either of the irrebuttable presumptions of 30 U.S.C. § 921(c)(3) which provides:

(3) If a miner is suffering or suffered from a chronic dust disease of the lung which (A) when diagnosed by chest roentgenogram, yields one or more large opacities (greater than one centimeter in diameter) and would be classified in category A, B, or C in the International Classification of Radiographs of the Pneumoconioses by the International Labor Organization, (B) when diagnosed by biopsy or autopsy, yields massive lesions in the lung, or (C) when diagnosis is made by other means, would be a condition which could reasonably be expected to yield results described in clause (A) or (B) if diagnosis had been made in the manner prescribed in clause (A) or (B), then there shall be an irrebuttable presumption that he is totally disabled due to pneumoconiosis or that his death was due to pneumoconiosis or that at the time of his death he was totally disabled by pneumoconiosis, as the case may be * * *.

The specific findings of the administrative law judge were that the miner was not totally disabled at the time of his death since he was working full time and that death was not due to pneumoconiosis or a respirable disease due to pneumoconiosis, "but rather to a probable myocardial infarction."

In adopting the findings of the administrative law judge the Appeals Council referred to the death certificate as evidence of the cause of death and concluded that the autopsy did not medically establish the existence of complicated pneumoconiosis. This finding apparently rests on the fact that the autopsy reports did not use the term "massive lesions." 30 U.S.C. § 921(c)(3), *supra*. The Appeals Council also stated that efforts had been made through its West Virginia agency to obtain more complete autopsy information, but that the reports already considered were all that were available.

The district court found that plaintiff was entitled to a rebuttable presumption that her husband was totally disabled from pneumoconiosis at the time of his death by reason of the autopsy which established the presence of anthracosis. However, he further concluded that this presumption was rebutted by the fact that the miner was engaged in his usual work at the time of death, citing the "interim presumptions" set

forth in 20 CFR § 410.490.[1] The district court agreed with the Secretary that the irrebuttable presumption of 30 U.S.C. § 921(c)(3) and pertinent regulations did not apply since the autopsy revealed simple, but not complicated pneumoconiosis. Finally, the court noted that the death certificate indicated that Dock Farmer died of a heart attack and it found there was no substantial evidence to the contrary.

▮ The plaintiff contends that the issue of whether her husband was totally disabled from pneumoconiosis at the time of his death was not conclusively foreclosed by reason of the fact that he continued to do mining work. She maintains that he was able to continue working only because his employer kept changing his job, each time giving him something easier to do. The work history furnished by his employer showed only that Dock Farmer performed general labor. In the unrelated case of *Farmer v. Weinberger,* 519 F.2d 627, 629–30 (6th Cir. 1975), we found that 20 CFR § 410.490(c), which provides that the presumption of total disability is rebutted by a showing that a miner is engaged in his usual employment, violates neither due process nor the congressional purpose of enacting the 1972 amendments to the Act. In the same opinion this court approved Social Security Ruling 73–36 which states that a miner who continues to work in the mines may be totally disabled if his employment is characterized by "sporadic work, poor performance and marginal earnings." In the present case there was no evidence of such employment characteristics and the employer stated that no other records were available. There was substantial evidence to support the finding that plaintiff did not establish that her husband was totally disabled from pneumoconiosis at the time of his death. See *Adkins v. Weinberger,* 536 F.2d 113 (6th Cir. 1976). Further there is no indication that evidence existed which would bring this case within Ruling 73–36.

▮ We do not agree, however, that the record supports the findings and conclusions of the Secretary with respect to the remaining claim of the plaintiff—that her husband's death was due to pneumoconiosis. We believe that the administrative law judge and the Appeals Council failed to assist plaintiff sufficiently in her effort to establish this claim. The regulations require the administrative law judge to "inquire fully" into the issues. 30 CFR § 410.640. In *Prokes v. Mathews,* 559 F.2d 1057 (6th Cir. 1977), we noted the nonadversary nature of the proceedings for benefits and stated that it is the duty of the administrative law judge to develop all the evidence where a claimant has no attorney at the hearing. In this case the autopsy report established the presence of pneumoconiosis at the time of death. This uncounseled claimant believed that her evidence also was sufficient to show that lung disease contributed to her husband's death. The claimant's daughter testified that her employer, a pathologist, had seen the autopsy report and told her that the anthracosis found in the autopsy "probably contributed to the heart condition and the emphysema, which were basically the cause of his death."

The Secretary did make some efforts to obtain further information about the autopsy. These efforts were dropped when the

---

1. (b) *Interim presumption.* With respect to a miner who files a claim for benefits before July 1, 1973, and with respect to a survivor of a miner who dies before January 1, 1974, when such survivor timely files a claim for benefits, such miner will be presumed to be totally disabled due to pneumoconiosis, or to have been totally disabled due to pneumoconiosis at the time of his death or his death will be presumed to be due to pneumoconiosis, as the case may be, if:

(1) One of the following medical requirements is met:

(i) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis (see § 410.428); or

* * * * * *

(c) *Rebuttal of presumption.* The presumption in paragraph (b) of this section may be rebutted if:

(1) There is evidence that the individual is, in fact, doing his usual coal mine work or comparable and gainful work (see § 410.-412(a)(1).

hospital where the autopsy was performed replied that the two reports were all they had. However, the record disclosed that the slides which were made at the hospital had been sent to Huntington, West Virginia. The pathologist who examined the slides and made the report was in Huntington, not Logan, West Virginia. The West Virginia examiner who sought further information at the request of the Ohio Social Security office wrote in a contact report that a more completely detailed report, including microscopic details, would be sent upon request to "medical records." The record does not disclose any attempt to obtain further information from the Huntington pathologist. It is a requirement of 30 U.S.C. § 923(b) that all available medical tests be used even at "some discommodation" to the Secretary. *Prokes, supra,* 559 F.2d at 1063.

Congress intended that miners who worked more than ten years in underground coal mines would benefit from the Act upon showing either by direct proof or by reliance on statutory presumptions that they were victims of black lung disease. To this end, it is provided in 30 U.S.C. § 921(c)(2),

> [I]f a deceased miner was employed for ten years or more in one or more coal mines and died from a respirable disease there shall be a rebuttable presumption that his death was due to pneumoconiosis.

The administrative law judge, knowing from the autopsy report that Dock Farmer had pneumoconiosis at the time of his death, should have developed further evidence on the question of whether this was the cause of death, or a contributing cause of death. If there are in fact no further autopsy records, and if the pathologist who made the report was not available to amplify it, other qualified medical witnesses could have been produced to state their opinions on the basis of the medical and other evidence in the record, including the lay testimony of Dock Farmer's breathing impairment. The administrative law judge and the Appeals Council interpreted the autopsy report as establishing only simple pneumoconiosis. Further examination of

slides or testimony of the pathologist or other experts might require a finding of complicated pneumoconiosis. If this should develop, petitioner would be entitled to the irrebuttable presumption of 30 U.S.C. § 921(c)(3) and 20 CFR § 410.458 that her husband's death was due to pneumoconiosis.

One significant error occurred at every stage of the proceedings in this case—reliance on the death certificate as substantial evidence of the cause of death. This is not a case where a physician who had treated the decedent and was familiar with his medical history and state of health ascribed death to a heart attack. A statement of the cause of death by such a person may be substantial evidence sufficient to support a finding that death was not due to pneumoconiosis. See *Wallace v. Mathews,* 554 F.2d 299 (6th Cir. 1977). Here the person who signed the death certificate apparently never saw Dock Farmer alive and indicated no knowledge of any disease or condition such as the existence of anthracosis which the autopsy revealed. In *Craig v. Weinberger,* 522 F.2d 394 (6th Cir. 1975), this court held that a negative inference drawn from a death record which does not mention a lung disorder is not substantial evidence that no respiratory impairment exists when there is no showing of the basis for attributing death to a heart attack. This is precisely the case here. The plaintiff produced autopsy findings that Mr. Farmer, after 40 years in the mines, had pneumoconiosis at the time of his death and abundant lay evidence that he suffered from a serious breathing impairment for at least two years prior to death. In the face of this evidence a death certificate disclosing no awareness of lung disorder and attributing death to "probably acute myocardial infarction" is not substantial evidence either that death did not result from a respirable disease presumed to be pneumoconiosis or that pneumoconiosis was not a contributing cause of death.

With the death certificate eliminated as evidence of the cause of death the Secretary was required to consider all the

relevant evidence. The medical evidence should be further developed to determine whether death was due to a respirable disease, either alone or as one of multiple causes. If further inquiry should produce substantial evidence that Dock Farmer's death should be medically ascribed to a chronic dust disease or another chronic disease of the lungs or that his death may have been due to multiple causes the provisions of 20 CFR § 410.462 would then be applicable:

§ 410.462 **Presumption relating to respirable disease.**

(a) Even though the existence of pneumoconiosis as defined in § 410.-110(o)(1) is not established as provided in § 410.454(a), if a deceased miner was employed for 10 years or more in the Nation's coal mines and died from a respirable disease, it will be presumed, in the absence of evidence to the contrary, that his death was due to pneumoconiosis arising out of employment in a coal mine.

(b) Death will be found due to a respirable disease when death is medically ascribed to a chronic dust disease, or to another chronic disease of the lung. Death will not be found due to a respirable disease where the disease reported does not suggest a reasonable possibility that death was due to pneumoconiosis. Where the evidence establishes that a deceased miner suffered from pneumoconiosis or a respirable disease and death may have been due to multiple causes, death will be found due to pneumoconiosis if it is not medically feasible to distinguish which disease caused death or specifically how much each disease contributed to causing death.

See *Smakula v. Weinberger*, 572 F.2d 127, 132–33 (3rd Cir. 1978).

The Secretary's reliance on our earlier decision in *Farmer v. Weinberger*, 519 F.2d 627 (6th Cir. 1975), is misplaced. There was no autopsy in that case and no medical evidence of the existence of pneumoconiosis which might have been a cause of death. There the administrative law judge found that the cause of death was unknown. There was no evidence in that case such as the autopsy report in the present one to require further inquiry on behalf of an uncounseled claimant.

The judgment of the district court is vacated. This case is remanded to the district court with directions to remand it to the Secretary for further proceedings consistent with this opinion.