584 F.2d 48
 Merther TREADWAY, Appellant,
v.
Joseph A. CALIFANO, Jr., Secretary of the Department of
Health, Education and Welfare, Appellee.
Dorvin R. WILSON, Appellant,
v.
Joseph A. CALIFANO, Jr., Secretary of Health, Education and
Welfare, Appellee.
 Nos. 77-1994, 77-2111.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 6, 1978.
Decided Oct. 5, 1978.
 
 Richard W. Crews, Beckley, W. Va. (E. Carl Meadows, Jr., Meadows & Crews, Beckley, W. Va., on brief), for appellants in 77-1994 and 77-2111.
 Rebecca A. Betts, Asst. U. S. Atty., Charleston, W. Va. (Robert B. King, U. S. Atty., Charleston, W. Va., and A. George Lowe, Sp. Asst. U. S. Atty., Baltimore, Md., on brief), for appellee in 77-1994 and 77-2111.
 Before HAYNSWORTH, Chief Judge, and WINTER, BUTZNER, RUSSELL, WIDENER and HALL, Circuit Judges, sitting en banc.
 HAYNSWORTH, Chief Judge:
 
 
 1
 Ordinarily, a court should apply the law as it exists at the time of decision. Bradley v. Richmond School Board, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). Newly enacted statutes usually are to be given effect in still pending judicial proceedings. But the Black Lung Benefits Reform Act of 1977, enacted on March 1, 1978, we conclude, is an exception to the rule.
 
 I.
 
 2
 In 1970 the claimants in these two cases filed applications for benefits under the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C.A. § 801, et seq. After final administrative denial of these applications by the Secretary of the Department of Health, Education and Welfare, each sought review in the district court. In each case the district court sustained the Secretary's denial of the benefits, and the claimants brought these appeals. While the appeals were pending in this court, on March 1, 1978, the Black Lung Benefits Reform Act of 1977, Public Law 95-239, was signed by the President and finally enacted. That Act substantially liberalized the criteria upon which such claims are adjudged and expanded the means by which they may be proven. It was obviously intended substantially to enlarge the number of allowable claims; and it provided agency reconsideration, upon the request of the claimant, of all pending and previously denied claims.
 
 II.
 
 3
 The Coal Mine Health and Safety Act of 1969, as amended in 1972 (hereinafter the 1969 Act), provided a comprehensive system for the payment of benefits to coal miners disabled by pneumoconiosis and to dependents of coal miners who had died of pneumoconiosis or while completely disabled by pneumoconiosis. In the beginning benefits were to be payable by the United States out of its general revenue, and the Act was to be administered by the Department of Health, Education and Welfare. Ultimately, however, the economic burden of the payment of benefits was to be transferred to the coal mine operators, and the Secretary of Labor was to replace the Secretary of Health, Education and Welfare as the administrator of the program.
 
 
 4
 In order to achieve this general purpose, provision was made in Part B for the filing of claims with the HEW through December 31, 1973.[1] Part C provided for the filing of claims on January 1, 1974 and after with the Secretary of Labor and were to be paid by an individual coal mine operator, if identifiable, or by a trust fund created out of assessments upon the industry on a tonnage basis. Because the burden of the payment might be imposed upon an individual coal operator or upon the industry, unlike the adjudication of Part B claims, the proceedings in the Department of Labor on Part C claims were made adversarial. The coal mine operator or operators upon whom the burden of payment might be imposed were entitled to notice and to participation in the proceedings.
 
 
 5
 Almost from the beginning, apparently, the Congress was dissatisfied with the HEW's administration of the Act. It was thought that deserving claims were being impeded and denied. This thought prompted the adoption of the 1972 amendments liberalizing the standards to be applied in adjudicating the claims and creating a number of presumptions facilitating proof of claims. Administration of the 1969 Act, as amended in 1972, however, did not come up to congressional expectations. There was active consideration of further amendments in 1975, and the congressional purpose that still more claims be allowed and paid resulted in the Black Lung Benefits Reform Act of 1977.
 
 
 6
 The Black Lung Benefits Reform Act of 1977, in § 15, provides for an amendment of Part C, Title IV, of the 1969 Act by adding a new section to be numbered 435. That section provides for agency review of all Part B claims which were pending on March 1, 1978, the effective date of the Act, or which had been denied on or before that date. Upon the request of the claimant, that review may be had initially in the Department of Health, Education and Welfare or in the Department of Labor. If in HEW, and the claim is not allowed there, the entire record must be referred to the Secretary of Labor for rereview, and the Secretary of Labor is authorized to allow the claim notwithstanding nonallowance by HEW. Whatever the administrative route, however, the agencies are to apply and the case is to be judged under the substantive amendments effected by the 1977 Act. When a claim is referred to the Secretary of Labor, he is directed to treat it as a Part C claim and to provide the claimant with an opportunity to present additional medical and other evidence. However, under subsection c, "Any individual whose claim is approved pursuant to this section shall be awarded benefits on a retroactive basis for a period which begins no earlier than January 1, 1974."
 
 
 7
 In these cases, the claimants are seeking benefits under the 1969 Act. They were considered in the Department on that basis, and review in the district court was on that basis. If they should be entitled to such benefits, they may be entitled to retroactive payments back to the time their claims were filed in 1970,[2] or, if later, when each become totally disabled with pneumoconiosis. Should they obtain entitlement upon § 15 review under the 1977 Act, however, subsection (c) would limit the payment of retroactive benefits to those accruing since January 1, 1974. Obviously these claimants have a stake in processing their claims under the 1969 Act.
 
 
 8
 The history of the 1977 Act shows clearly congressional concern that too few miners were being paid the benefits Congress had intended to provide them when enacting the legislation in 1969 and 1972.[3] There is no suggestion in the legislative history anywhere of a congressional intention to take anything away from any miner, or to limit benefits which were available to him prior to enactment of the 1977 Act. This strongly suggests that Congress intended that claimants should have the right to process a Part B claim to final conclusion without reference to the 1977 Act, and to obtain fully retroactive benefits if he ultimately prevailed on that claim; it was when the claim was allowable only under the 1977 Reform Act that the allowance of retroactive benefits was limited by subsection (c) of new section 435 to those accruing after January 1, 1974.
 
 
 9
 In an earlier version of the 1977 Act, instead of providing for agency review of Part B claims upon the request of the claimants, the Senate version authorized the refiling of a denied Part B claim as a Part C claim which would then be considered under the new statute. Probably no benefits, accrued before the refiling of the Part C claim, would be payable, but clearly any retroactive payments would not extend back beyond January 1, 1974. In Senate Report No. 94-1254, p. 16, the Senate Committee explained that it was requisite that pending Part B claims be filed as Part C claims, and, with respect to retroactive allowance, there might be advantage in prosecuting a previously filed Part B claim to a conclusion. It was also clearly explained that the words "pending" and "denied" in reference to claims meant pending with the agency or denied by the agency and did not refer to pending claims in the courts or claims finally denied by the courts. Thus a Part B claimant who had finally been denied benefits by HEW had the option of seeking judicial review where, if successful, he might obtain a fully retroactive award, or of refiling a Part C claim where he would get the advantages of the liberalized substantive provisions of the new statute. Inferentially, he might do each simultaneously.
 
 
 10
 That is the construction of the 1977 Act by the Secretary of HEW. The 1977 Act, in its new § 435, required the Secretary to notify all claimants with pending or previously denied claims of the availability of the review under the newly enacted amendments. This he did in an Important Black Lung Notice. In the Notice he informed those claimants of their rights to new § 15 review upon request. It also informed those who had claims pending either in the Department or in the courts that a request for review would not affect their rights to proceed simultaneously with the old Part B claim, which would be processed in the Department or in the courts "under the old law but without consideration of the recent changes." We think he properly and necessarily came to that conclusion, preserving each claimant's opportunity to receive fully retroactive benefits if, just prior to March 1, 1978, the claimant had a claim which was properly subject to further consideration either in the Department or in the courts. Any other interpretation would be quite inconsistent with the evident congressional purpose to enhance and facilitate the payment of benefits to miners and not to curtail them.
 
 
 11
 What was done, of course, was consistent with the congressional purposes of protection of the public revenues[4] and transferring as rapidly as possible the burden of the payment of benefits to coal mine operators and the industry. A miner had a right to process a Part B claim to final conclusion so that, if successful, he would obtain fully retroactive benefits payable out of the public purse. If unsuccessful, however, he had the right of reconsideration as a Part C claim under the 1977 Act, but with the January 1, 1974 limit on the payment of retroactive benefits.
 
 
 12
 We conclude, therefore, that we must consider these claims under the 1969 Act without reference to the substantive provisions of the 1977 Act.
 
 
 13
 It is arguable that we might do both, considering the claim under the 1977 Act if we first conclude that it was properly denied as a Part B claim under the 1969 Act, or that we might remand to the Secretary for further consideration under the 1977 Act. Neither seems appropriate, however.
 
 
 14
 Remand to the Secretary for consideration under the 1977 Act would be inconsistent with the statutory scheme. Review under the 1977 Act is available to such a claimant upon a simple request. The statute itself makes the request the only mechanism which starts the process of review, and it is the miner's request which converts the old Part B claim to a Part C claim with its limited retroactive payment provision where the burden of payment of benefits rests upon the industry and not upon the public. Moreover, the miner may request that the initial review be by the Secretary of Labor to whom we cannot remand the case.
 
 
 15
 Nor should we undertake to determine whether or not a claim, if properly denied as a Part B claim, would be allowable upon § 15 review as a Part C claim.
 
 
 16
 Section 15 review is essentially a fact finding process under new standards. There are new provisions directing and restricting consideration of particular items of evidence. Upon their review, some pieces of evidence considered by the Secretary will no longer be open for consideration, while the weight to be accorded other pieces of evidence must be enhanced. That is a task initially for the fact finder.
 
 
 17
 Moreover, the § 15 review requires a miner to be afforded the right to submit additional medical and other evidence, a right which this court is not equipped to recognize. Nor should there be any attempt to determine the claim as a Part C claim under the 1977 Act without the presence of a coal mine operator who may be obligated to make the payments.[5] Such an operator was not a party during the administrative fact finding process and is not a party here. Such an operator, however, may be brought into the administrative review if such review is requested by the claimant.
 
 
 18
 For these reasons, we consider the claims exclusively under the 1969 Act without regard to the substantive provisions of the 1977 Act.
 
 
 19
 The problem before us is what law should now govern a court's decision in review of a claim denied as a Part B claim by the Department of HEW. No question of agency procedure after passage of the 1977 Act is before us, and no reference to agency procedures is intended as a considered judgment of any particular problem which may confront either agency in the administration of the 1977 Act.
 
 III.
 
 20
 On the merits we remand both cases to the Secretary. In considering whether or not the predicate of the 15-year presumption had been established, substantial weight was given to x-rays, which initially or upon rereading had been found to be negative. In Petry v. Califano, 577 F.2d 860 (4th Cir. 1978), we held that impermissible. The cases should be reconsidered by the Secretary under the Petry standards.
 
 
 21
 REMANDED.
 
 
 
 [1]
 There was provision for an interim period. Claims filed during the period July 1, 1973 through December 31, 1973 were to be processed by the Secretary of Labor, but the special provisions relating to claims filed during that period are not relevant to our inquiry here
 
 
 [2]
 Though the claims were filed in 1970, each of these claimants continued working until the Spring of 1973. Probably, no benefits would be payable to either for a period during which he was working regularly
 
 
 [3]
 See H.R.Rep.No. 151, 95th Cong., 1st Sess. 1-26, 30-34 (1977); S.Rep.No. 209, 95th Cong., 1st Sess. 1-23 (1977), U.S.Code Cong. & Admin.News 1978, p. 300
 
 
 [4]
 The author of the bill that passed the House explained the prohibition of retroactive payments as necessary to hold the costs within the ceiling imposed by the first concurrent resolution of its budget for fiscal year 1978. 123 Cong.Rec.H. 9614 (daily ed. Sept. 19, 1977)
 
 
 [5]
 See H.R.Conf.Rep.No. 864, 95th Cong., 2d Sess. 23 (1978), U.S.Code Cong. & Admin.News 1978, p. ----