**UNITED STATES STEEL CORPORATION, Petitioner,**

v.

**Frank GRAY and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 77–3096.

United States Court of Appeals, Fifth Circuit.

Feb. 2, 1979.

Rehearing Denied March 13, 1979.

James D. Strader, Gen. Atty., Philip J. Sheehe, Charles T. Myers, Pittsburgh, Pa., for petitioner.

Carin A. Clauss, Sol. of Labor, Laurie M. Streeter, Assoc. Sol., U.S. Dept., of Labor, Washington D.C., Frank White, Lee D. Richardson, Dept. of Labor, Washington, D.C., for respondents.

Before WISDOM, COLEMAN, and RONEY, Circuit Judges.

WISDOM, Circuit Judge:

The United States Steel Corporation ("U. S. Steel") petitions for review of the Benefit Review Board's decision awarding disability benefits under Title IV of the Federal Coal Mine Health and Safety Act, 30 U.S.C. § 901 et seq., to Frank Gray, a former employee of the corporation. The primary questions raised by this case concern the Board's application of the evidentiary presumption set forth in section 411(c)(4) of the Act. 30 U.S.C. § 921(c)(4). Because the Board improperly applied the standards of section 411(c)(4) in evaluating the evidence presented at the administrative hearing, we grant the petition and remand the case to the Board for reconsideration.

I

Claimant-Respondent Frank Gray worked for United States Steel and its predecessors as a mine construction man from 1948 until 1974, with the exception of a two-year period from 1950 to 1952. In early 1974, after leaving his employment with the petitioner, Gray filed a claim for total disability benefits under Title IV of the Federal Coal Mine Health and Safety Act of 1969. Gray claimed that he was totally disabled by a chronic, dust-related respiratory impairment related to his employment with U.S. Steel. The Department of Labor's Office of Workers' Compensation Programs determined that Gray was eligible for black lung benefits and that U. S. Steel was responsible for the payment of benefits. U. S. Steel objected to that determination and requested a hearing.

The hearing was held in 1975. Gray's evidence, in addition to his own testimony, consisted of letters of diagnosis and pulmonary test reports from Dr. Francis Connery, Gray's personal physician, a written summary of an examination by Dr. E. G. Givhan, and a copy of a settlement Gray reached with U. S. Steel under Alabama's Workmen's Compensation Law. Dr. Connery's diagnosis was that Gray was 100 percent disabled by pacinar emphysema. Dr. Connery saw no evidence of dust retention in Gray's lungs, but concluded that dust aggravated Gray's condition. Dr. Givhan's reading of Gray's x-rays was that Gray had advanced emphysema. But did not have silicosis or advanced pneumoconiosis. The Director of the Office of Workmen's Compensation introduced x-ray readings by Drs. Robert Walton and Seaburt Goodman, and rereadings by Dr. R. H. Browning. Dr. Walton diagnosed Gray's impairment as severe emphysema. Dr. Goodman likewise diagnosed the condition as severe emphysema, but he also saw in the x-rays evidence of linear fibrosis consistent with chronic bronchitis, as well as diffuse nodular fibrosis "consistent with Simple Pneumoconiosis Class II to III". Dr. Browning's rereadings stated that the x-rays were wholly negative for pneumoconiosis. He found a form of severe emphysema. None of the doctors whose diagnoses were submitted into evidence by the claimant and the Director testified at the hearing.

U. S. Steel's medical evidence consisted of the testimony of Dr. Ben Branscomb and Dr. Branscomb's letter of diagnosis of Gray's condition. Dr. Branscomb concluded that Gray had conventional emphysema of a kind typically found in persons who have not been constantly exposed to dust. He read the x-rays as negative for pneumoconiosis and added that if severe emphysema such as Gray's were related to black lung it would be highly unusual for the x-rays not to show "impressive evidence" of black lung. On cross-examination Dr. Branscomb conceded, however, that he would not state "for sure" that coal dust did not cause emphysema.

Because Gray's x-rays were negative as to pneumoconiosis, he had to rely upon the evidentiary presumption of pneumoconiosis set forth in section 411(c)(4) of the Act. Under the Social Security Administration regulations issued under the authority of section 411(a) of the Act [30 U.S.C. 921(a)], a claimant can establish entitlement to black lung disability benefits only by showing "that he is totally disabled due to pneumoconiosis, and that his pneumoconiosis arose out of employment in the Nation's coal mines". 20 C.F.R. § 410.410(b). The statutory definition of pneumoconiosis in effect at the time of the hearing stated that pneumoconiosis means "a chronic dust disease of the lung arising out of employment in a coal mine".[1] 30 U.S.C. § 902(b). Section 411(c)(4) of the Act provides that if a person who was employed for fifteen or more years in coal mines can demonstrate by other than x-ray evidence that he has a totally disabling respiratory or pulmonary impairment, he is entitled to a rebuttable presumption of total disability due to pneumoconiosis even if his chest x-rays are interpreted as negative. The presumption can be rebutted by establishing that "(A)

such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine". 30 U.S.C. § 921. *See also* 40 C.F.R. § 410.414(b). The hearing officer found that Gray had worked for more than fifteen years in underground mines, and that he had a totally disabling respiratory or pulmonary impairment. He therefore gave Gray the benefit of the statutory presumption. Finding the corporation's evidence insufficient to rebut the presumption of pneumoconiosis, the hearing officer rendered a decision that U. S. Steel was liable for the payment of 100 percent disability benefits to the claimant.

U. S. Steel appealed that decision to the Benefits Review Board. The Board affirmed the hearing officer's decision and order, and U. S. Steel petitioned for review in this Court.

## II

■ U. S. Steel raises basically two issues in its petition. The first issue concerns the constitutionality of the Benefits Review Board's interpretation of section 411(c)(4) of the Act, the provision concerning the rebuttable presumption of 100 percent disability due to pneumoconiosis. The petitioner argues that the Board violated its due process rights by interpreting the statute to restrict rebuttal evidence to such evidence as tends to establish either that the claimant does not have pneumoconiosis or that the claimant's impairment did not arise in connection with employment in a coal mine. We find no merit in this contention. The statute in plain terms does limit rebuttal to evidence showing the absence of pneumoconiosis or showing that the claimant's impairment is related to his occupation.[2] This is hardly

---

1. The Black Lung Benefits Reform Act of 1977, P.L. No. 95–239, 92 Stat. 95, which became effective on March 1 of 1978, has expanded the statutory definition of pneumoconiosis. Section 2(a) of the Reform Act, 92 Stat. 95 (to be codified at 30 U.S.C. § 902(b)), states that pneumoconiosis means "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of

coal mine employment". The effect of this amendment on Gray's case is discussed below in the text of this opinion.

2. The statute provides:
   The Secretary may rebut the presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment

surprising, however, because the presumption that the Secretary or mine operator seeks to rebut is the presumption that the claimant is totally disabled by pneumoconiosis as a result of his employment in the coal mines. We need not, however, decide the constitutionality of section 411(c)(4) in the abstract. Even assuming that a coal mine operator might wish to adduce a type of rebuttal evidence that is not encompassed by the rebuttal clause of section 411(c)(4), the petitioner in this case was not prevented by the hearing officer from submitting whatever rebuttal evidence it wished to submit. All of U. S. Steel's evidence related to the issues of whether Gray in fact had pneumoconiosis and whether Gray's impairment was related to his employment at U. S. Steel. At oral argument, the petitioner admitted that the Board's interpretation of section 411(c)(4) in no way hampered the presentation of its rebuttal case.

The second issue is more substantial. This is the petitioner's contention that the Benefits Review Board's conclusion of compensable total disability is not supported by substantial evidence. U. S. Steel does not argue that the section 411(c)(4) presumption was not properly applicable to Gray. It does not dispute the finding that Gray worked fifteen or more years in an underground mine within the meaning of the statute. Rather, U. S. Steel argues that it successfully rebutted the presumption. The evidence, it contends, overwhelmingly points to the conclusion that Gray is not suffering from pneumoconiosis and that his

present impairment is unrelated to his work as an employee of U. S. Steel.

■  Turning to the decision of the hearing officer, we find that he did not adequately evaluate the evidence. Under the statute, to repeat, the petitioner could rebut the presumption of disabling, occupation-related pneumoconiosis by showing (a) that Gray did not have pneumoconiosis, or (b) that his respiratory or pulmonary impairment was not related to his employment with U. S. Steel. § 411(c)(4), 30 U.S.C. § 921(c)(4). In his opinion, the hearing officer stated that the employer "failed to introduce sufficient evidence to rebut [the] presumption". He observed that the evidence was insufficient to show that Gray's impairment did not arise out of or in connection with his employment. The hearing officer felt that the medical evidence suggesting that dust may have contributed to or aggravated Gray's condition precluded successful rebuttal on the ground of job-relatedness. He found that Gray was "totally disabled by a respiratory or pulmonary impairment which has been diagnosed as severe emphysema and may include pneumoconiosis". He nowhere found that Gray suffers from pneumoconiosis and nowhere stated his disposition of U. S. Steel's rebuttal theory that Gray does not have pneumoconiosis. The defect is not remedied by the hearing officer's finding that Gray's disability might have been aggravated by his exposure to dust, for the statute requires a finding of pneumoconiosis or a similar chronic dust disease.[3]  The regulations,

did not arise out of, or in connection with, employment in a coal mine.
30 U.S.C. § 921.

**3.**  The Social Security Administration regulation expands upon the statutory definition of pneumoconiosis:

"Pneumoconiosis" means: (1) A chronic dust disease of the lung arising out of employment in the Nation's coal mines, and includes coal workers' pneumoconiosis, anthracosilicosis, anthracosis, anthrosilicosis, massive pulmonary fibrosis, progressive massive fibrosis, silicosis, or silicotuberculosis, arising out of such employment.
20 C.F.R. § 410.110(o).

The petitioner argues that § 410.110(o) and 20 C.F.R. § 410.414 improperly expand the stat-

utory definition. Section 410.414 sets forth the ways of establishing the existence of pneumoconiosis for purposes of the statute. Subparts (a) and (b) of § 410.414 essentially track the statute. Subpart (a) concerns direct proof of pneumoconiosis by means of chest roentgenogram (x-ray), biopsy, or autopsy. Subpart (b) sets forth the statutory presumption created by section 411(c)(4) of the Act. Subpart (c) concerns proof of pneumoconiosis "by other relevant evidence". Because the decision of the Board rested on the rebuttable presumption of pneumoconiosis, subpart (b) of section 410.414, the question of the validity of subpart (c) of the regulation is not before us. We see no merit in the petitioner's contention that §§ 410.414 and 410.110(o) are overly broad, because § 410.-

moreover, require as a condition of entitlement that pneumoconiosis be the "primary" cause of disability. 20 C.F.R. § 410.426(a).

On appeal, the Benefits Review Board, it appears, attempted to remedy the defects in the hearing officer's evaluation of the evidence. Recognizing that the hearing officer did not resolve the issue whether U. S. Steel had rebutted the section 411(c)(4) presumption by showing that Gray did not have pneumoconiosis, the Board ruled in favor of Gray on the ground that U. S. Steel's evidence was as a matter of law insufficient to rebut the presumption regardless of its persuasiveness. The Board relied on *Ansel v. Weinberger,* 6 Cir. 1976, 529 F.2d 304, which the Board interpreted as holding that negative x-ray reports and medical diagnoses based on x-rays are insufficient as a matter of law to rebut the section 411(c)(4) presumption. With the x-ray reports and the medical opinions based on the x-rays thus set aside, no rebuttal evidence remained, and the Board entered its decision in favor of Gray.

■ This is demonstrably erroneous. The *Ansel* case does not hold that negative x-rays and medical opinion based thereon are necessarily insufficient to rebut the statutory presumption. The *Ansel* court stated only that negative x-rays alone are insufficient to rebut the presumption. In *Ansel* the Secretary of Labor introduced only the x-rays and the testimony of three radiologists. The court said that "the Secretary would have been required at least to produce a medical opinion that Mr. Ansel did not have pneumoconiosis in order to rebut the presumption". *Id.* at 310. This implies that medical opinion based on x-rays could suffice to rebut the presumption.[4] To hold, as the Board did, that all evidence based on negative x-rays is legally insufficient would be to make section 411(c)(4)'s rebuttable presumption virtually irrebuttable.

The view the Board took of *Ansel v. Weinberger,* 6 Cir. 1976, 529 F.2d 304, shows a misunderstanding of the function and proper application of section 411(c)(4). The statutory presumption was enacted as part of the Black Lung Benefits Act of 1972. Section 411(c) was Congress's response to the perceived inadequacies of x-ray technology in diagnosing pneumoconiosis. Before the passage of the 1972 Act many ex-miners who in fact suffered from pneumoconiosis or silicosis were denied benefits because they could not demonstrate by x-ray evi-

414(b) simply restates the statutory presumption and § 410.110(*o*) merely elaborates the definition found in 30 U.S.C. § 902(b) by listing, by way of illustration, several chronic dust diseases of the lung.

There is, however, a question whether the regulations *as applied* by the hearing officer impermissibly expand the definition of pneumoconiosis. The hearing officer found that Gray had severe emphysema aggravated by dust exposure. But emphysema, however aggravated by dust, is not a chronic dust disease of the lung arising out of employment in the coal mines. The Board's opinion, moreover, is hazy on this issue. The Board cited the testimony of Drs. Connery and Givhan suggesting that coal dust was a contributing factor in the development of Gray's condition. The Board either meant that Gray has emphysema caused by black lung or, on the other hand, adopted the hearing officer's aggravation theory.

The issue has not been fully briefed by the parties, but it does not seem to us that emphysema aggravated by dust exposure qualifies as statutory pneumoconiosis under either the definition set forth in the 1969 Act as amended in 1972, or the new definition enacted as part of

the 1977 Reform Act, *see* note 1 *supra.* We note that the hearing officer's "aggravation theory" is embodied in the new regulation issued by the Secretary of Labor pursuant to his 30 U.S.C. § 936(a) authority, which gives a very expansive meaning to the statutory term "chronic dust disease of the lung". *See* 43 Fed.Reg. 36825 (1978) (to be codified at 20 C.F.R. § 727.202). Although we recognize that the Board's and the Secretary's interpretation of the statute is entitled to great deference, the new regulation does appear to reach very far, perhaps beyond the intendment of the statute. The validity of the "aggravation" theory is not before us, however, because the new regulation was not applied in this case and because it is not clear whether the Review Board applied the "aggravation" theory.

4. *See also, Morris v. Mathews,* 6 Cir. 1977, 557 F.2d 563. In *Morris,* the presumption was held not to have been rebutted. The court emphasized that "there was no medical opinion which stated either that appellant did not have pneumoconiosis or that his pneumoconiosis was not disabling". *Id.* at 564.

dence that they suffered from the disease. S.Rep. No. 92–743, 12, U.S.Code Cong. & Admin.News 1972, p. 2305; *Usery v. Turner Elkhorn Mining Co.,* 1976, 428 U.S. 1, 31–32, 96 S.Ct. 2882, 49 L.Ed.2d 752. The statute shifts to the Secretary or to the mine operator the burden of disproving disability due to pneumoconiosis once the claimant makes the threshold showing that he worked fifteen or more years in the mines and suffers a totally disabling respiratory or pulmonary impairment. The burden on the Secretary or operator is then to prove by a preponderance of evidence that the claimant does not suffer pneumoconiosis, as defined by the Act, or that the impairment is not connected with his employment in the mines. *Cosand v. Secretary of Health, Education, and Welfare,* 1976, E.D.Mich., 408 F.Supp. 263, 269.

The statute says nothing about the quantum of rebuttal evidence that constitutes a preponderance. Section 413(b) of the Act, however, does prohibit the denial of a claim solely on the basis of x-ray results. 30 U.S.C. § 923(b). But, as the Supreme Court observed in *Usery v. Turner Elkhorn Mining Co.,* 1976, 428 U.S. 1, 32–33, 96 S.Ct. 2882, 2900, 49 L.Ed.2d 752,

> Section 413(b) does not make negative x-ray evidence inadmissible, or ineligible to be considered as ultimately persuasive evidence when taken together with other factors—for example, a low level of coal dust concentration in the operator's mine, a relatively short duration of exposure to coal dust, or the likelihood that the miner is disabled by some other cause.

We do not have before us a case of an operator relying solely on negative x-ray

evidence to rebut the presumption. Besides the x-rays and the negative readings of Drs. Walton, Goodman, and Browning, the record contains Dr. Branscomb's medical opinion based on the x-rays and on ventilatory function and arterial blood gas tests. Six physicians studied the x-rays. Five of those physicians not only read the x-rays as negative but stated in detail the basis for their respective opinions that Gray's disability was due to severe pulmonary emphysema and not pneumoconiosis or some other chronic dust disease. Dr. Branscomb testified as to the unlikelihood that Gray's emphysema could have been caused by black lung disease. U. S. Steel submitted evidence intended to show that Gray did not work in areas of high dust concentration. The record, in short, is replete with the kinds of "other evidence" that section 413 commands the fact-finder to consider.[5]

■ The petitioner U. S. Steel is entitled to a decision based on all the evidence. Because the Board in effect excluded the bulk of the evidence, and therefore did not look to all the evidence in the record, we decline to rule on the petitioner's claim that the decision rendered was not supported by substantial evidence. On remand, the Board is to consider two questions: (1) Does Frank Gray have pneumoconiosis, as defined by the statute? (2) Did Frank Gray's impairment arise out of, or in connection with, his employment with U. S. Steel?[6] Both questions must be considered in light of all the evidence. Unless the answer to one or both of those questions is, by a preponderance of the evidence, "no", Frank Gray is entitled to disability benefits.

---

5. Section 413 states in relevant part:
   In determining the validity of claims under this part, all relevant evidence shall be considered, including, where relevant, medical tests such as blood gas studies, x-ray examination, electrocardiogram, pulmonary function studies, or physical performance tests, and any medical history, . . . .
   30 U.S.C. § 923(b).

6. We remand on the causation or job-relatedness issue because it is not clear that the Board properly weighed the x-ray evidence and medical opinions based on x-ray evidence in con-

cluding that Gray's condition arose out of, or in connection with, his employment in a coal mine. Although the Board's opinion might suggest that the Board decided on the balance of all the evidence that Gray's condition arose out of his employment, the portion of the opinion dealing with causation immediately follows the Board's statement that the x-ray-based evidence is legally insufficient to rebut the statutory presumption, suggesting that the Board ignored the petitioner's x-ray evidence and medical opinion testimony on this issue as well.

## III

A question remains as to the effect on this case of the amendments to the statute made by the Black Lung Benefits Reform Act of 1977, Pub.L. No. 95–239, 92 Stat. 95. The Reform Act, which became effective March 1, 1978, effected one change that is relevant to this case. Section 2(a) of the Act (to be codified at 30 U.S.C. § 902(b)) expands the definition of pneumoconiosis from "a chronic dust disease of the lung arising out of employment in a coal mine" to "a chronic dust disease of the lung and it sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment". The question arises whether on remand the Board should decide the case under the new statutory definition of pneumoconiosis, or under the pre-March 1978 definition.[7]

Two courts of appeals have recently faced the issue whether the new amendments should be applied to cases that were pending in the courts on the effective date. In *Treadway v. Califano*, 4 Cir. 1978, 584 F.2d 48 (en banc), the Fourth Circuit Court of Appeals decided that judicial review of the disposition of a claim filed as a Part B claim[8] on the basis of the 1969 Act is governed by the substantive provisions of the 1969 Act, and not those of the 1977 Reform Act, regardless of when the claim reaches the federal courts. Section 15 of the 1977 Reform Act added a new section 435 to Part C, Title IV of the 1969 Act. The new section provides for review by either the Department of Health, Education, and Welfare or the Department of Labor, at the claimant's election, of all Part B claims that were pending on March 1, 1978, or that had been denied on or before that date. Section

15 sets forth new procedural and substantive provisions governing such agency review. Because a claim taken to section 15 review becomes a Part C claim—one ultimately payable by an individual operator or by the industry as a whole[9]—the affected operators have a right to participate as parties in the proceedings and payable retroactive benefits are limited to those that have accrued since January 1, 1974. Because a Part B claim is so radically converted upon the request for section 15 agency review, the *Treadway* court held that a Part B claim must be treated as a Part B claim on judicial review. It must be reviewed under the standards of the 1969 Act, as amended in 1972.

The Third Circuit Court of Appeals faced a slightly different question in *Yakim v. Califano*, 3 Cir., 1978, 587 F.2d 149. *Yakim* involved the question whether an appellate court, in reviewing after the effective date of the 1977 Reform Act a district court's review of the Social Security Administration's denial of a claim, should give effect to the Reform Act amendments concerning (a) the Secretary's practice of re-reading x-rays and (b) whether a claimant should be credited for years of self-employment in the mines. The original House version of the Reform Act contained a provision expressly making those among other amendments retroactive to December 30, 1969. H.R.Rep. No. 151, 95th Cong. 1st Sess. 21, *reprinted in* [1978] U.S.Code Cong. & Admin.News, pp. 465, 468. The deletion of that provision from the final bill, in the opinion of the *Yakim* court, gives rise to the inference that the amendments were not to be applied on review of cases pending on the

7. The new definition makes it clear that pulmonary or respiratory impairments that are not themselves chronic dust diseases, but that are the consequence of a chronic dust disease arising out of coal mine employment, are "pneumoconiosis" within the meaning of the statute.

8. Under Part B, title IV of the Act, a miner can file a claim with the Department of Health, Education, and Welfare. If a Part B claim is found meritorious, it is payable by the United States, and not by the responsible coal mine operator or the coal industry. A Part C claim,

on the other hand, is payable by the responsible operator, if identifiable, or from a trust fund created by assessments levied upon the industry.

9. A Part B claim pending on March 1, 1978, or denied before that date, may be reviewed under section 15. Upon the claimant's request for section 15 review, the claim automatically becomes a Part C claim, payable by the industry but with the limitation on retroactive payments.

effective date of the Reform Act. The court cited the reasoning of the *Treadway* decision as bolstering its conclusion that the new standards are not applicable to cases pending as of the effective date.

Neither *Treadway* nor *Yakim* squarely decided the issue presented here. Gray's claim, unlike the *Treadway* claims, is a Part C claim involving operator liability. We do not face the issue whether a Part B claim is to be treated as a Part C, section 15 claim on judicial review. *Yakim* is not persuasive authority for refusing to apply on remand the new definition of pneumoconiosis to Gray's case, because the new definition was not contained in the original House bill, but was added by conference committee, H.Conf.Rep. No. 95–864, 95th Cong. 1st Sess. 15, *reprinted in* [1978] U.S.Code Cong. & Admin.News, p. 536. Therefore, the rejection by the conference committee of the retroactivity provision in the original House version does not reflect upon the committee's intentions with respect to the effective date of the new definition.[10]

 We hold, nevertheless, that the Board, on remand, should apply the definition of pneumoconiosis that was in effect when Gray's claim was heard in 1975. The general rule, of course, is that an appellate court must apply law that becomes effective after judgment is entered but before the appeal is decided. *United States v. The Schooner Peggy*, 1801, 5 U.S. (1 Cranch) 103, 2 L.Ed. 49; *Yakim v. Califano, supra.* This principle is equally applicable to administrative review panels. An exception to this rule exists, however, "where . . necessary to avoid manifest injustice", *Yakim v. Califano, supra,* 587 F.2d at 150. This is such a case. Because the Board on remand will be deciding the case on the basis of the record made at the 1975 hearing, the parties will not have the opportunity to present evidence geared to proving or dis-

proving pneumoconiosis as defined under the Reform Act amendment. The new definition therefore should not be applied unless the parties are afforded the opportunity to reopen the hearing record to adduce evidence in response to the amendment of the definition of pneumoconiosis.

The petition is GRANTED and the case is REMANDED to the Benefits Review Board for further proceedings consistent with this opinion.

---

10. We are, furthermore, dubious of the implication that the *Yakim* court finds in the House conference committee's rejection of the retroactivity provision of the original House bill. Although this rejection certainly constitutes a rejection of the December 1969 effective date, it does not follow that Congress intended the amendments not to apply to cases pending on the March 1, 1978 effective date. Congress spoke only in terms of effective dates, and did not, so far as appears, ever address the problem of application to cases pending on the effective date.